UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MONTE ELLIOTT SMITH, )<br>)<br>　　　*Plaintiff*　　　)<br>)<br>v.　　　　　　　　　　　　　　)<br>)<br>CAROLYN W. COLVIN, *Acting*　)<br>*Commissioner of Social Security*, )<br>)<br>　　　*Defendant*　　　) | No. 2:14-cv-429-JHR |

***MEMORANDUM DECISION*[1]**

In this Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal, the plaintiff contends that certain limitations in the residual functional capacity ("RFC") assigned to him by the administrative law judge are unsupported by evidence or otherwise improper and that the administrative law judge improperly evaluated a particular medical opinion. I affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through December 31, 2012 for purposes of SSD,

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on June 12, 2015, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 17.

1

Finding 1, Record at 1165; that he suffered from an anxiety-related disorder/anxiety not otherwise specified, an affective disorder/mood disorder, and a personality disorder/personality disorder not otherwise specified, impairments that were severe but which, considered separately or in combination, did not meet or equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, *id*. at 1165-68; that he retained the RFC to perform work at all exertional levels, except that he could understand and remember only simple instructions, execute simple tasks, interact superficially with coworkers, tolerate minimal supervision, and adapt to occasional routine changes in the workplace and could not interact with the general public, Finding 5, *id*. at 1170; that he was capable of performing his past relevant work as a bakery helper, stocker, material handler, and flagger, Finding 6, *id*. at 1175; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset of disability, May 1, 2007, through the date of the decision, June 28, 2013, Finding 7, *id*. at 1176.  The Appeals Council declined to review the decision, *id*. at 1151-53, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

      The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

      The administrative law judge reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work.  20 C.F.R.

§§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); SSR 82-62, reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I.  Discussion

### A.  Co-Workers and Supervisors

The plaintiff first contends that the RFC limitations to minimal supervision and superficial interaction with co-workers are supported by no medical opinion and wrongly "split[] the difference" between opinions of a testifying medical expert and state-agency physicians, entitling him to remand. Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Earlier Itemized Statement") (ECF No. 11 in Case No. 2:12-cv-07-DBH, incorporated by reference in Itemized Statement of Errors Pursuant to Local Rule 16.3 Submitted by Plaintiff ("Itemized Statement") (ECF No. 10)) at 2.

Specifically, the plaintiff asserts that the medical expert who testified at his first hearing testified that he had a marked impairment in social functioning and the state-agency reviewing physicians found a moderate impairment, presumably in this area, but the administrative law judge found a "moderate to marked" impairment in social functioning, "indicating that he was reconciling conflicting opinion[s] of the M[edical] E[xpert] and Agency physicians." *Id*. Because this finding was at a "different level of impairment of social functioning than found by any medical source[,]" he reasons, the administrative law judge committed reversible error. He cites no authority in support of this conclusion. *Id*. at 2-3.

The administrative law judge whose decision led to this appeal specifically relied on the testimony from the earlier hearing, as well as the reports of the state-agency physicians. Record at 1172, 1175. The administrative law judge clearly stated that, "in order to resolve a conflict with the medical expert's testimony at the June, 2011, hearing, the undersigned has found moderate to marked limitations in social functioning." *Id*. at 1175. He also indicated that he did not fully adopt the medical expert's testimony on this point because "many of the conflicts referred to by Dr. Claiborn were subjective reports by the claimant which have not been substantiated by other sources." *Id*. at 1172.[2]

My research has located no authority directly supporting or rejecting the plaintiff's argument, but this court has accepted, many times, expert opinion that a Social Security claimant had "moderate to marked" limitations in specific areas of mental RFC. *See, e.g., Day v. Astrue*, No. 1:12-cv-141-DBH, 2012 WL 6913439 at *9 (D. Me. Dec. 30, 2012); *Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294 at *6 (D. Me. Sept. 27, 2012) (rejecting argument that ALJ must explain change from finding moderate to marked limitations in social functioning to finding only moderate such limitations on remand); *Donaher v. Barnhart*. No. 05-195-B-W, 2006 WL 1454795 at *2 (D. Me. May 23, 2006) (plaintiff's evaluating expert found moderate to marked restrictions of activities of daily living).

Given the long-standing rule that it is an administrative law judge's job to resolve conflicts in the medical evidence, *see, e.g., Wilner v. Astrue*, No. 2:11-cv-21-GZS, 2012 WL 253512 at *4 (D. Me. Jan. 26, 2012), it cannot be error for an administrative law judge to combine a medical

---

[2] This is not a case in which the administrative law judge posed a hypothetical question to a vocational expert that included the "moderate to marked limitations" language. Record at 1664; *see Melland v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00223-NT, 2012 WL 1800722, at *2-*3 (D. Me. Apr. 26, 2012). It is also important to note that the administrative law judge made the challenged compromise in his consideration of Step 3 of the sequential evaluation process. Record at 1169. This case was decided at Step 4. The claimant does not contend that he should have been found to meet any particular Listing for a mental impairment at Step 3.

4

opinion that a claimant is moderately limited in one specific area of functioning with that of another medical source that the claimant is markedly so impaired in a finding that the claimant has a "moderate to marked" limitation in that area. From all that appears, the administrative law judge could have chosen to use only one of the two opinions, rather than melding them, in his Step 3 analysis.[3] That he did not makes no apparent difference for purposes of the Step 4 analysis, upon which the decision rests.

If the plaintiff means only to argue that the RFC limitations to superficial interaction with coworkers, minimal supervision, and no interaction with the general public, Record at 1179, lack supporting medical evidence, the limitation on interaction with the general public could not possibly have been harmful to him.

With respect to coworkers or supervisors, Dr. Claiborn testified as follows:

> I think [the plaintiff] is going to have significant problems interacting with coworkers and probably more frequently with supervisors than would be tolerated [in] a lot of places. I think he is likely to have some dispute about things with supervisors in social [INAUDIBLE]. It is hard to say exactly how [INAUDIBLE].

Record at 1140. He went on to testify that the plaintiff could not interact with the general public, but could work in a setting "where people see him." *Id*. at 1141. Upon questioning by the plaintiff's attorney, Dr. Claiborn stated "I think [the plaintiff] is going to have frequent problems with coworkers. . . . And, less frequent, but significant problems with supervisors." *Id*. at 1142. The plaintiff apparently contends that this testimony does not support the RFC's limitations to "interact[ing] superficially with coworkers but tolerat[ing] only minimal supervision." *Id*. at 1170.

---

[3] The plaintiff's presentation on this issue, citing the testimony from an earlier hearing, Earlier Itemized Statement at 3, conflates Dr. Claiborn's testimony about a "marked" limitation in social functioning for purposes of the Step 3 analysis, Record at 1138-39, with his testimony about the likelihood that the plaintiff would have frequent problems interacting with coworkers and significant problems interacting with supervisors for purposes of Steps 4 and 5. *Id*. at 1140, 1147.

5

What little case authority I could locate on this specific question does not support the plaintiff's position. In *Engebrecht v. Colvin*, No. 12-11342, 2013 WL 4604597 (E.D. Mich. Aug. 29, 2013), the administrative law judge noted medical source testimony that the claimant was moderately limited in her ability to work in coordination with or proximity to others. *Id*. at *14. The administrative law judge assessed an RFC that limited the claimant "maximally . . . to superficial contact with supervisors and coworkers" and stated that the claimant "should not work with the general public." *Id*. at *15. He explained that these elements of the RFC were imposed "to accommodate [the claimant's] low self-esteem, sensitivity to criticism and baseline difficulties with social interaction and her problems with getting along with others in a work setting[.]" *Id*. at *18 n.3. The court affirmed the commissioner's decision that there were jobs existing in significant numbers in the national economy that the claimant could perform. *Id*. at *24.

In *Nave v. Astrue*, No. 3:07-cv-0036-JAJ, 2008 WL 4371335 (S.D. Iowa Aug. 15, 2008), the claimant contended that the administrative law judge's RFC did not account for, *inter alia*, her limitations in social functioning, thereby depriving the RFC of any support in the medical evidence. *Id*. at *10. On the Psychiatric Review Technique Form completed by the state-agency reviewing psychiatrist at issue, the reviewer indicated that the claimant had moderate difficulties in maintaining social functioning. *Id*. The RFC included the following language:

> She would have no significant difficulties in these regards in a work environment which does not require (a) more than superficial interaction with co-workers when performing any job duties, or (b) more than superficial interaction with the public, but allowing for public presence in the work area.

*Id*. at 11. The court held that this was an appropriate consideration of the limitations discussed by the reviewing psychiatrist.

In sum, I am not persuaded that Dr. Claiborn's testimony is so inconsistent with the RFC that the administrative law judge could only have based the RFC on his own interpretation of raw medical evidence.

The plaintiff next contends that the RFC limitations at issue are so vague and meaningless as to be fatally improper. Earlier Itemized Statement at 4-5. Specifically, he challenges the terms "minimal supervision" and "superficial interaction." *Id*. at 4. As noted above, the same terminology has been used in other Social Security cases and accepted by reviewing courts. The defendant does not address this argument.

My research located dozens of Social Security cases in which the claimant's RFC included a limitation to "minimal supervision." In none of these cases was the term rejected as vague, meaningless, or otherwise indicating reversible error. *See, e.g.*, *Washington v. Colvin*, No. 4:13-cv-01129-JEO, 2014 WL 3970196 at *8 (N.D. Ala. Aug. 12, 2014); *Skeens v. Colvin*, Civil Action No. 1:13-13600, 2014 WL 4656121 (S.D.W.Va. Sept. 16, 2014). The plaintiff here asserts that the vocational expert's definition of "minimal supervision" as "performing your task without the need for somebody constantly observing you," Record at 1147, "does not comport with any reasonable understanding of 'minimal,' nor with the M[edical] E[xpert]'s testimony." Earlier Itemized Statement at 5. However, that definition comports with the following unchallenged term in an RFC: "minimal supervision with no jobs that deal with 'over the shoulder' or constant critical supervision." *Sherman v. Astrue*, No. CV 12-35-BLG-CSO, 2013 WL 6115059, at *3 (D. Mont. Dec. 10, 2012).[4]

---

[4] Furthermore, the definition quoted by the plaintiff is the one given by the vocational expert at his earlier hearing, but it is the definition used by the vocational expert at the hearing leading up to this appeal that should be at issue. That more recent testimony defined "minimal supervision" as "Customary supervision in the workplace. The job tasks are simple, repetitive to the point that there is only minimal supervisory functionality in order to make certain the job tasks are being completed." Record at 1665. "Superficial interaction with coworkers" was defined as "brief contact with coworkers, and that the contacts would be non-detailed; that the work would be not in tandem, or conjunction with other workers. The work would be performed independently." *Id*.

7

At oral argument, the plaintiff's attorney stressed the argument raised in his earlier itemized statement that Social Security Ruling 85-15 requires a finding of disability when a claimant can only tolerate minimal supervision, because minimal supervision constitutes a substantial loss of the ability "to respond appropriately to supervision, coworkers, and usual work situations." Earlier Itemized Statement at 4-5. However, there is nothing mandatory about the language of SSR 85-15, in context. It provides:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Social Security Ruling 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 347.

First, the Ruling speaks only in terms of what would be justified, not what is required. Second, an ability to tolerate minimal supervision is not the equivalent of an inability to respond appropriately to that quantum of supervision. Next, as noted above, many courts have upheld findings that there are significant numbers of jobs requiring minimal supervision in the national economy. The plaintiff has cited no authority in support of his contention, at oral argument, that a restriction to minimal supervision equals a substantial loss in the ability to respond appropriately to supervision "by definition." This argument by the plaintiff is unpersuasive.

There are even more Social Security cases in which the term "superficial interaction" is used in reference to coworkers. Again, in none of those decisions is the term rejected as vague or meaningless or otherwise unacceptable. In at least one case, the court rejected such a

characterization. *Whitehouse v. Colvin*, No. 3:13-CV-894 (MPS), 2014 WL 4685187, at *14 (D. Conn. Sept. 19, 2014).

The plaintiff is not entitled to remand on the basis of the administrative law judge's use of the terms "minimal supervision" and "superficial interaction."[5]

### B.  Evaluation of Source Opinion

The plaintiff contends that the administrative law judge committed reversible error on remand by stating that portions of the opinion of Dr. Howard Kessler, an examining psychologist, were "not well supported" and appeared to be based in part "on the claimant's subjective allegations[.]" Itemized Statement at 4.  He characterizes this as a "cursory statement [that] hardly cures the error for which the Commissioner sought remand." *Id*.  Going further, he dismisses the reference to his subjective allegations as "facile and meaningless boilerplate." *Id*.

The defendant responds that the administrative law judge supportably credited the cognitive limitations identified by Dr. Kessler and supportably rejected the remaining findings in his report as not well supported and based in part on the plaintiff's subjective allegations. Opposition at 8.  I agree with the defendant, *id*. at 9, that the fact that the non-cognitive limitations identified by Dr. Kessler may be consistent with Dr. Claiborn's testimony and the report of a treating counselor, Itemized Statement at 4, does not require the administrative law judge to adopt them.  *See, e.g., Gagnon v. Colvin*, No. 2:13-cv-00213-NT, 2014 WL 3530629 at *4 (D. Me. July 15, 2014).

Similarly, the fact that "Dr. Kessler's opinion follows from a detailed neuropsychological evaluation[,]" Itemized Statement at 4, does not mean that the administrative law judge must adopt

---

[5] I do not reach the defendant's argument that any error in the administrative law judge's failure to adopt verbatim the limitations to which Dr. Claiborn testified was harmless.  Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 14) at 11-14.

9

all of the limitations suggested by Dr. Kessler. An administrative law judge is not required to adopt the opinion of every trained examiner who "believed that [his or her] assessment provides a reliable and valid representation" of the physical or mental status of the claimant. Itemized Statement at 5. There is no "all or nothing" rule applicable to evaluation of examining source opinions in Social Security law. Indeed, the rule is quite the opposite: an administrative law judge may pick and choose among portions of expert opinions. *Larlee v. Social Sec. Admin. Comm'r*, No. 2:14-cv-00228-JDL, 2015 WL 3400664 at *7 (D. Me. May 27, 2015).

The administrative law judge here made clear that he accepted Dr. Kessler's cognitive limitations. Record at 1174. He went on:

> However, the reported need to work with a minimal number of people and to work where the claimant's psychological triggers were minimized, and correction and criticisms were non-judgmental and non-confrontational is not well supported, and appears to be based in part on the claimant's subjective allegations. Therefore, these limitations have been given little weight by the undersigned.

*Id.* The plaintiff asserts that this statement of reasons for rejecting a portion of Dr. Kessler's opinion is insufficient, but refers to no authority to support his contention. These specific reasons have been found to be sufficient by this court on more than one occasion in the past, and the plaintiff presents no reason to diverge from that line of authority. *See, e.g., Bowie v. Colvin*, No. 2:12-cv-205-DBH, 2013 WL 1912913 at *6 (D. Me. Mar. 31, 2013); *Baer v. Astrue*, No. 2:11-cv-313-DBH, 2012 WL 3042946 at *8-*9 (D. Me. July 2, 2012).[6]

I agree with the administrative law judge that the social limitations advocated by Dr. Kessler are based in part on the plaintiff's subjective allegations. *See* Record at 657. In addition, any error in concluding that Dr. Kessler's social limitations were not well supported is obviated

---

[6] A one-time examining consultant is not subject to the "treating source" rule, pursuant to which a medical opinion may be rejected only for good reason. *Elmore v. Astrue*, No. 2:11-cv-394-DBH, 2012 WL 2913702 at *5 (D. Me. June 27, 2012).

by the vocational expert's testimony that all of the jobs he identified for the plaintiff would still be available

> [i]f there were conditions that coworkers and supervisors will need to be educated to the need to treat [the] claimant in a relatively gentle, non-confrontational manner; correction and criticism will need to be non-judgmental, as well as brief and to the point; from the perspective of teaching new skills, this should be done in smaller bursts rather than expecting him to master large volumes of information at a given time.

Record at 1666-67. This question repeats Dr. Kessler's limitations almost verbatim. The administrative law judge adopted this testimony in his opinion. *Id*. at 1176.

The plaintiff is not entitled to remand on this basis.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 15th day of July, 2015.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge